# IN THE UNITED STATES DISTRICT COURT
# FOR NEW HAMPSHIRE

| | |
|---|---|
| ARLENE QUARATIELLO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: |
| ) | |
| TOWN OF RAYMOND, DUDLEY TUCKER ) | |
| LIBRARY, VALERIE MOORE, trustee of Dudley ) | **COMPLAINT** |
| Tucker Library, in her official capacity as trustee ) | |
| and in her individual capacity, JILL GALUS, ) | **JURY DEMANDED** |
| trustee of Dudley Tucker Library, in her ) | |
| official capacity and in her individual capacity, ) | |
| SABRINA MALTBY, former trustee of Dudley ) | |
| Tucker Library, in her individual capacity, ) | |
| KIRSTEN A. RUNDQUIST CORBETT, director ) | |
| of the Dudley Tucker Library, in her ) | |
| official and individual capacities, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Arlene Quaratiello, brings this Complaint against Defendants, the Town of Raymond, Dudley Tucker Library, Valerie Moore, Jill Galus, Sabrina Maltby, and Kristen A. Rundquist Corbett, for terminating her employment in violation of her fundamental right to freedom of speech. This action was a deprivation of Quaratiello's fundamental rights under the United States and New Hampshire Constitutions and New Hampshire state law. Firing an individual because of her political advocacy as a state representative could not be a more blatant violation of the right to engage in political advocacy. This action is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367. Three documents at the center of this dispute are attached as exhibits to this Complaint and incorporated herein by reference.

**I.    PARTIES**

1. Plaintiff, ARLENE QUARATIELLO, is an individual who currently, and at all relevant times, is a citizen of the United States and a resident of Atkinson, New Hampshire.

2. Defendant, TOWN OF RAYMOND, is a municipality in New Hampshire. Raymond Town Offices are located at 4 Epping Street, Raymond, New Hampshire 03077-0909.

3. Defendant, DUDLEY TUCKER LIBRARY, ("the Library" or "DTL") is a town entity with an address of 6 Epping Street, P.O. Box 909, Raymond, New Hampshire 03077-0909 that at all relevant times operated as a subdivision of Raymond, New Hampshire.

4. On knowledge and belief, Defendant VALERIE MOORE, trustee of DUDLEY TUCKER LIBRARY, is an individual who currently, and at all relevant times, is a resident of Raymond, New Hampshire, with an address of 14 Plains Road, Raymond, New Hampshire, 03077-2209. Moore is sued in her official and individual capacities.

5. On knowledge and belief, Defendant, JILL GALUS, trustee of DUDLEY TUCKER LIBRARY, is an individual who currently, and at all relevant times, is a resident of Raymond, New Hampshire, with an address of 56 Harriman Hill Road, Raymond, New Hampshire, 03077-1510. Galus is sued in her official and individual capacities.

6. On knowledge and belief, Defendant, SABRINA MALTBY, former trustee of DUDLEY TUCKER LIBRARY, is an individual who currently, and at all relevant times, is a resident of Raymond, New Hampshire, with an address of 13 Main Street, Raymond, New Hampshire, 03077-2205. Maltby is sued in her individual capacity.

7. Defendant, KIRSTEN A. RUNDQUIST CORBETT, director of DUDLEY TUCKER LIBRARY (hereinafter "Director Corbett"), is, on knowledge and belief, an individual who currently, and at all relevant times, is a resident of Raymond, New Hampshire. with an

address of 3 Lakeview Road, Raymond, New Hampshire, 03077-1305. Corbett is sued in her official and individual capacities.

## II. JURISDICTION AND VENUE

8. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

9. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

11. This Court has supplemental jurisdiction over the state constitutional and statutory claims made herein pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this district and/or all the acts described in this Complaint occurred in this district.

## III. FACTUAL ALLEGATIONS

13. Arlene Quaratiello is a Republican member of the New Hampshire House of Representatives, representing the district Rockingham 18, and serves on the House Education Committee.

14. On December 12, 2022, she began a full-time position of employment as the Assistant Library Director of the Library, beginning a six-month probationary period before permanent employment began.

15. Other employees of the Library are very actively involved with political issues, expressing their political positions regularly.

16. Particularly, Director Corbett regularly utilizes Library social media accounts to share her advocacy for the continued inclusion of controversial books on library shelves. For example, the library Facebook page was repeatedly used to share articles and images critical of so-called "book banning."

17. Two citizen petitions were filed in Raymond for a March 28, 2023, election to remove certain politically-controversial books containing nudity and sexual references from the Children's Room in the Library and to withdraw the Library from the American Library Association (ALA) due to opposition to the political positions taken by the ALA.

18. Other librarians at the Library, including Director Corbett, opposed these petitions, and Director Corbett sent an email to library staff informing them of the upcoming election and asserting, "I will begin planning our campaign."

19. All three trustees at the time, Valerie Moore, Jill Galus, and Sabrina Maltby, made a video in the Library that was posted on the Library's Facebook page by Director Corbett, advising citizens to vote against the petition.

20. After Representative Mike Drago reported this video to the New Hampshire Attorney General for electioneering, the video was taken down.

21. At the public hearing on the citizen petitions, Director Corbett spoke extensively against the citizen petitions, urging people to vote against them.

22. On January 16, 2023, Quaratiello sent an email to the Atkinson/Plaistow branch of the Republican Party urging Republicans to run for elected positions as library trustees in Plaitsow or Atkinson and to present conservative positions on such issues. (Exhibit A).

23. This email was sent from Quaratiello's personal email account and was not sent during work hours or in her official capacity.

24. On February 27, 2023, Quaratiello sent a letter to the local newspaper, the Carriage Towne News in Atkinson, NH, the town where she serves as a New Hampshire Representative. That letter endorsed two conservative candidates for the trustee role at the Kimball Library, the Atkinson Public Library. The letter did not discuss the Library, where she worked. (Exhibit B[1]).

25. On the morning of Wednesday April 5, 2023, Quaratiello was called to meet with Library Trustee Valerie Moore, Library Director Kirsten Rundquist Corbett, and Town Manager Ernest Creveling. They informed her that she was being terminated from employment.

26. Quaratiello was immediately provided a termination letter at the meeting, backdated April 4, 2023, stating that she was terminated "because of [her] lack of separation of personal/political values and agendas from DTL policies, procedures, and occurrences" and because she was "not able to maintain the separation between personal and Library tenets." (Exhibit C).

27. That termination letter, cosigned by Town Manager Ernest Creveling, was the official act of someone whose conduct "may fairly be said to represent official policy" of the Town of Raymond and therefore provides a basis for compensatory claims against the Town of Raymond. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

28. After reading this letter at the meeting, Quaratiello asked for further explanation for her termination, asking whether this termination was because of her political activities outside

---

[1] Three copies of the letter are attached. The first was downloaded from the online edition of the newspaper. The second is a copy of the letter, as published in the newspaper. The third is a scan of the letter that was contained in Quaratiello's personnel file.

5

of work. Corbett orally confirmed by an expression of assent that this termination was specifically because of Quaratiello's support for conservative, Republican, library trustee candidates.

29. Quaratiello requested a public hearing from the Library regarding the circumstances related to her termination, pursuant to RSA 202-A:17. While waiting for a response to this request, she also requested a copy of her personnel file.

30. Quaratiello received a copy of her personnel file that included two documents. The first was the newspaper opinion piece that she had published. A sentence of the article was highlighted: "They [the candidates Quaratiello endorsed] also believe in protecting our children from the increasing amount of inappropriate material available both in print and online."

31. The personnel file also included a copy of the private e-mail message Quaratiello had sent the Atkinson/Plaistow Republican Club to recruit conservative library trustee candidates in Atkinson and Plaistow.

32. Quaratiello does not know how the Library obtained a copy of the private email she sent to the Republican club.

33. On Wednesday, April 19, Quaratiello sent an email to the Library threatening legal action if she did not receive a public hearing regarding her termination.

34. On Friday, April 21, Quaratiello received a letter from the Library indicating that her employment had been restored, and she returned to work on Tuesday, April 25th.

35. Director Corbett has repeatedly told Quaratiello, since Quaratiello's reinstatement, that she believes the termination decision was justified.

36. In one conversation Director Corbett berated Quaratiello, claiming that Quaratiello acted the way she did only because she wanted to help her "Christian friends" at the library.

37. Director Corbett has monitored Quaratiello's actions closely since her reinstatement and criticized her for any minor infraction while on the job, treating her differently from other employees.

38. Quaratiello has never received an apology from the Library for her termination or from any individuals involved in the termination process.

39. The library trustees Valerie Moore, Jill Galus, and Sabrina Maltby regularly visit the library and have never apologized for their conduct or given Quaratiello any indication that they believed their original conduct was wrongful.

40. Because of this close monitoring and the ongoing criticism she has received for her First Amendment activity, Quaratiello fears the possibility of being terminated again for her First Amendment activity.

41. Accordingly, Quaratiello's termination has continued to chill her willingness to engage in political activity as she is concerned that she will be terminated a second time.

42. Plaintiff has suffered humiliation and emotional and mental distress as a result of her unlawful termination.

**IV.   CAUSES OF ACTION**

<u>**COUNT I**</u>
**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**(U.S. Const. amend. I; U.S.C. § 1983)**

43. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

44. The First Amendment protects the right of public employees to engage in political speech. *Connick v. Myers*, 461 U.S. 138, 144-45 (1983) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." (internal quotation marks and citations omitted)).

45. Public employees have the right to support parties of their choice and to campaign for the candidates of their choice. Expression of such political views is at the very center of the freedoms of the First Amendment.

46. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics . . . ." *Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)).

47. Off-duty political speech, as is the case regarding the speech at issue here, is even more clearly within the scope of the protections offered by the First Amendment. When Quaratiello wrote a letter to a newspaper in Atkinson, the jurisdiction she represents in the New Hampshire Legislature, endorsing a candidate for a local election, she did so in her personal capacity and her capacity as a politician. It was clearly not in her capacity as a librarian; there was no indication whatsoever in her letter that she was acting on behalf of the Library, nor was there any attempt to utilize her library position as leverage to support her political position.

48. Quaratiello was not disciplined for any conduct related to her behavior as an employee, but solely for her political activity.

49. The language for which Quaratiello was specifically disciplined, "[t]hey [the candidates Quaratiello endorsed] also believe in protecting our children from the increasing amount

of inappropriate material available both in print and online," is language that is clearly the expression of a political opinion related to public questions surrounding the public issue of the protection of children that did not in any way bear on Quaratiello's ability to perform her job.

50. Although Quaratiello has now been restored to her employment, her initial termination, regardless of any subsequent action by the Library, constituted a violation of her First Amendment rights. She suffered harms to her reputation and her employment record, as well as the intangible harm of the injury to her First Amendment rights that resulted from the chilling of her speech. She suffered the intangible harm of the emotional and mental distress that resulted from the injury to her First Amendment rights. As the Supreme Court has held, a completed violation of a First Amendment right is sufficient for legal standing on the basis of nominal damages. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Accordingly, Quaratiello can properly bring a case for at least nominal damages based on the injury she sustained, as well as seeking compensatory damages for the specific harms she experienced.

51. Because Director Corbett has repeatedly indicated to Quaratiello that she agrees with the original decision to terminate her and would do so again, has continued to criticize her for her First Amendment activity, and has monitored and scrutinized Quaratiello differentially than other employees, Quaratiello is reasonably fearful that she may face future disciplinary action for her political expression, providing a basis for injunctive and declaratory relief.

52. Quaratiello's ability to engage in political advocacy has been chilled based on her termination.

53. It is clearly established that an employee cannot be terminated for off-duty political advocacy that is entirely unrelated to the performance of the employee's job.

54. Quaratiello's right to the freedom of speech and advocacy was unconstitutionally violated when she was terminated, and she has been chilled in the exercise of her constitutional rights since she was rehired.

55. Political loyalty is not in any way a criterion for Quaratiello's position as a librarian. Her position is not a political appointment, and her decision-making authority does not extend to making political decisions for the Library.

56. In *Pickering v. Bd. of Educ.*, 391 U.S. 563, 564 (1968), the Supreme Court held that a teacher's exercise of his constitutional rights to publicly critique in a newspaper his public employer was constitutionally protected and could not provide a basis for his dismissal. If a teacher critiquing his own employer in *Pickering* is protected, how much more does the First Amendment protect Quaratiello's newspaper letter endorsing candidates in Atkinson, a jurisdiction different from her employer, where the action was clearly far beyond her duties as a librarian in Raymond.

57. Quaratiello's discipline was not based on any matter related to her employment; her employment by a library in Raymond, New Hampshire, has nothing to do with Quaratiello's opinions regarding the best choice for library board in her own, different town of Atkinson. Instead, this dispute is an issue of public interest. The decision to remove certain children's books for inappropriate content is a political issue and one of public concern.

58. While the Defendants are certainly free to espouse their own opinions on such issues, they cannot fire an employee for expressing a differing political opinion from that possessed by the leadership of the Library.

59. Stifling dissent from the prevailing opinion among those most concerned with a public issue is a clear violation of the First Amendment.

60. The public interest in having free and unhindered debate on matters of public importance is the core value of the Free Speech Clause of the First Amendment. Terminating Quaratiello for her political activity constituted a clear and obvious violation of her fundamental First Amendment rights.

61. Under *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571-72 (1968), Quaratiello's right not to be terminated for her political expression was clearly established at the time of the Defendants' actions.

## COUNT II
### Violation of Plaintiff's Due Process Rights

**(U.S. Const. amend. I; U.S.C. § 1983)**

62. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

63. The Fourteenth Amendment to the United States Constitution prohibits the Defendants from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's political advocacy.

64. The government may not regulate speech based on policies that permit arbitrary and discriminatory enforcement. *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 649 (1981) (discussing "arbitrary application that this Court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.").

65. The government may not regulate speech based on a policy that causes persons of common intelligence to "guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926).

66. The government also may not regulate speech in ways that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.").

67. Quaratiello was provided no notice of any policy prohibiting political activity on the part of Library employees. She was never given any indication, in writing or otherwise, that off-duty political activity was prohibited.

68. Quaratiello was given no indication that she might face termination for her political activity. On the contrary, she regularly witnessed other members of the Library staff, including Director Corbett, engage in substantial and significant political advocacy, including at times political advocacy on the job, which obviously poses problems not posed by off-the-job political advocacy. With on-duty advocacy tolerated, Quaratiello had no reason to believe that off-duty political actions would be considered problematic.

69. There is no official policy prohibiting Library employees from engaging in political activity.

70. Disciplining Quaratiello for her political advocacy without any prior notice that political activities are unwelcome or against official policy violated her right to due process under the law.

## COUNT III
### Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law

**(U.S. Const. amend. XIV; U.S.C. § 1983)**

71. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

72. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the laws, which prohibits Defendants from treating the Plaintiff differently than similarly situated employees.

73. The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

74. By disciplining Quaratiello for her conduct while not similarly disciplining other employees for political speech, the Library demonstrated that it does not prohibit all speech on the part of its employees, but it prohibits speech that only expresses a political viewpoint disfavored by Defendants.

75. Political advocacy for the progressive position on issues surrounding the presence of controversial, sexually-explicit books in the children's section of libraries has been regularly accepted by the Library; in fact the Library itself, through social media and other political forums, has directly engaged in advocacy for that viewpoint, while disfavoring a competing position.

76. Allowing Director Corbett to engage in political activity while prohibiting Quaratiello from doing so is blatant viewpoint discrimination.

77. There is no rational basis for distinguishing between Quaratiello's expression of views and the expression of her supervisors. The only distinction is that one viewpoint was favored, and the other was not. This is blatant discrimination that violates her right to equal protection.

**COUNT IV**
**Violation of Plaintiff's New Hampshire Right to Freedom of Speech**

(N.H. Const. pt. I, art. 22; U.S.C. § 1367)

78. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

79. Part I, Article 22 of the New Hampshire Constitution provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. Const. pt. I, art. 22.

80. This provision "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Opinion of Justices*, 128 N.H. 46, 50 (1986) (citing *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

81. By punishing Plaintiff for the content of her political views, as explained above, the Defendants violated her rights under the New Hampshire Constitution. Terminating Quaratiello because of the political expression she engaged in violated her fundamental rights to political activity.

82. Like the Federal Constitution, the New Hampshire Constitution prohibits firing public employees due to the nature of their political views.

## COUNT V
### Violation of Plaintiff's New Hampshire Right under the Public Employee Freedom of Expression Law

(RSA 98-E:1, *et seq*.; U.S.C. § 1367)

83. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

84. New Hampshire law provides, "No person shall interfere in any way with the right of freedom of speech, full criticism, or disclosure by any public employee." RSA 98-E:2.

85. It provides that "a person employed as a public employee in any capacity shall have a full right to publicly discuss and give opinions as an individual on all matters concerning any government entity and its policies." RSA 98-E:1. "[T]he section protects State employees' rights to freedom of expression more broadly than the United States Supreme Court jurisprudence under *Pickering*." *Appeal of Booker*, 653 A.2d 1084, 1087 (N.H. 1995). This statute "serves to free a State employee's speech rights from the limits imposed by the *Pickering* and *Bennett* balancing test. . . . Accordingly, we will not balance the petitioner's first amendment interests against the government's interests. . . ." *Id.*

86. Under this state statute, therefore, a state employee, like Quaratiello, may always give opinions as an individual on matters of state concern.

87. Quaratiello spoke on a matter of great state concern, stating her view of the appropriate choice for political office in an upcoming election.

88. Quaratiello also gave her opinion as an individual, speaking in her own capacity, not that of the Library, in making her political statement.

89. Accordingly, her speech was also protected fully by statute, and without the need for a balancing test to determine whether her speech was protected.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the following relief:

(A)  A declaratory judgment that Defendants' termination of Plaintiff for exercising her right to political advocacy violated her rights under the First and Fourteenth Amendment;

(B)  A declaratory judgment that Defendants' unequal treatment of Plaintiff's political speech constituted unequal treatment under the First and Fourteenth Amendment.

(C)  A declaratory judgment that Defendants' conduct violated the Plaintiff's right to free speech under the New Hampshire Constitution and state law;

(D)  A permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from disciplining Plaintiff or other similarly situated employees for off-duty political speech and activity;

(E)  A permanent injunction requiring the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf to expunge any negative statement from the Plaintiff's record and redress any other negative consequences Plaintiff may have experienced as a result of their conduct

(F)  Compensatory or, in the alternative, nominal damages for the violation of Plaintiff's protected rights;

(G)  Punitive damages from Defendants sued in their individual capacities for their egregious conduct, motivated by malicious intent or by egregious disregard for Plaintiff's protected rights;

(H)   Compensatory or, in the alternative, nominal damages, for the violation of Plaintiff's protected rights from all Defendants, as Quaratiello's termination constituted an act of the official authority of the Town of Raymond;

(I)   Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(J)   All other further relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff demands trial by jury on all claims and issues so triable.

By:/s/ Jacob M. Rhodes
Jacob M. Rhodes, Esq. (NH Bar #274590)
Cleveland, Waters and Bass, P.A.
Two Capital Plaza, Fifth Floor
Concord, NH 03301
(603) 224-7761
rhodesj@cwbpa.com

GEOFFREY SURTEES** (KY Bar No. 89063)
OLIVIA SUMMERS** (VA Bar No. 86919)
NATHAN MOELKER** (VA Bar No. 98313)
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: gsurtees@aclj.org; osummers@aclj.org; nmoelker@aclj.org;

**Not admitted in this jurisdiction; application for pro hac vice admission forthcoming

4858-3697-1146, v. 2